UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| BRAD L. BLANK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-987 |
| | ) | |
| v. | ) | Honorable Joseph G. Scoville |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On May 17, 2004, plaintiff filed his application for benefits alleging a May 30, 2003 onset of disability. His claim was denied on initial review. On June 7, 2007, plaintiff received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 653-73). On July 26, 2007, an ALJ issued a decision finding that plaintiff was not disabled. (A.R. 587-94). On February 20, 2008, the Appeals Council granted review and vacated the ALJ's decision, remanding for further administrative proceedings. (A.R. 596-97). Plaintiff's disability insured status expired on December 31, 2008. Thus, it was plaintiff's burden to submit evidence demonstrating that he was disabled on or before December 31, 2008. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

On September 28, 2009, plaintiff received a second hearing before an ALJ, at which he was represented by counsel.  (A.R. 674-92).  On October 16, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 13-27).  The Appeals Council denied review on August 9, 2010 (A.R. 4-6), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment.  (docket # 20).  Plaintiff has filed a motion seeking an order remanding this matter to the Commissioner for consideration of new evidence.  (docket # 9).  His motion will be denied, because he has not carried his statutory burden under sentence six of 42 U.S.C. § 405(g).  Alternatively, plaintiff asks the court to overturn the Commissioner's decision on the following grounds:

1.    The ALJ's findings that plaintiff did not meet the requirements of listings 12.02 and 12.04 are not supported by substantial evidence; and

2.    The ALJ committed error when he found that plaintiff "was not disabled even though he stated in his Decision that the Plaintiff-Appellant had a marked limitation in his ability to maintain concentration, persistence and pace when the vocational expert testified that this impairment would preclude all substantial gainful work activity[.]"

(Statement of Issues, Plf. Brief at 3, docket # 8).  Indulgently, the later argument is considered as a challenge to the adequacy of the evidence supporting the ALJ's finding at step 5 of the sequential analysis that plaintiff was not disabled. Upon review, the court finds that the hypothetical question the ALJ posed to the VE failed to incorporate the ALJ's factual finding regarding plaintiff's RFC.  Thus, the VE's response to the inaccurate hypothetical question did not satisfy the Commissioner's

-2-

burden.[1]   The Commissioner's decision will be vacated and the matter remanded to the

Commissioner under sentence four of 42 U.S.C. § 405(g).

### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to

determine whether the Commissioner's findings are supported by substantial evidence and whether

the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124,

125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is

defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the

evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v.*

*Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th

Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence

---

[1]"Administrative law judges employ a five-step sequential inquiry to determine whether an
adult claimant is disabled within the meaning of the Social Security Act."  *Warner v. Commissioner*,
375 F.3d 387, 390 (6th Cir. 2004).  Under the sequential analysis, "The claimant must first show that
[]he is not engaged in substantial gainful activity.  Next, the claimant must demonstrate that []he has
a 'severe impairment.'  A finding of 'disabled' will be made at the third step if the claimant can then
demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed
impairment.'  If the impairment does not meet or equal a listed impairment, the fourth step requires
the claimant to prove that []he is incapable of performing work that []he has done in the past.
Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then
other factors, including age, education, past work experience, and residual functional capacity, must
be considered to determine if other work can be performed.  The burden shifts to the Commissioner
at this fifth step to establish the claimant's ability to do other work."  *White v. Commissioner*, 572
F.3d 272, 282 (6th Cir. 2009).

shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on May 30, 2003, his alleged onset of disability,[2] and continued to meet the

___

[2] On May 30, 2003, plaintiff was working as a route sales driver for Frito Lay when he stumbled and fell approximately four feet from the back of his delivery truck. He was unconscious for less than a minute. (A.R. 15, 21). The overwhelming majority of the medical records presented by plaintiff relate to the period from his accident through September 2005, the month he settled his worker's compensation claim. (A.R. 667-68; *see* A.R. 94-532, 544-77, 626-42).

requirements through December 31, 2008, but not thereafter. (A.R. 18). Plaintiff had not engaged in substantial gainful activity since May 30, 2003. (A.R. 18). Plaintiff had a severe mental impairment "involving residuals of a brain injury and depression." (A.R. 18). The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 19-20). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> Through at least his date last insured, the claimant had the residual functional capacity to perform work at all exertional levels, subject to an environmental need to avoid even moderate exposure to noise and a limitation to unskilled work involving no more than 2-step tasks in a stable work environment with no production quotas, and not requiring contact with the public or more than incidental contact with supervisors or co-workers.

(A.R. 20). The ALJ found that plaintiff's subjective complaints were not fully credible. (A.R. 20-25). Plaintiff appeared to have the ability to work when he wanted to:

> The evidence also appears to show that the claimant has the capability to perform work he enjoys without his symptoms interfering. For example, early in his course of rehabilitation and despite his allegations of increased distractibility, he was able to attend an auto [race] surrounded by 200 other people "without too much difficulty," using ear plugs the whole time (Exhibit 12F at 211). After he started working at Goodwill, he was able to accomplish three hours of work in 30-minute increments punctuated with breaks on home-based projects, such as washing his car (Exhibit 12F at 64). The breaks ranged from 10 to 15 minutes and he did not report needing to sleep or take two to three naps "in order to get through the day" (Exhibit 12F at 125).

(A.R. 24). Plaintiff was unable to perform his past relevant work. (A.R. 25). He was 49-years old as of his date last insured. Thus, he was classified as a younger individual at all times relevant to his claim for DIB benefits. (A.R. 26). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 26). The transferability of work skills was not material to a disability determination. (A.R. 26). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question posed by the ALJ, the VE testified that there were more

than 35,600 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 687). The ALJ found that this constituted a significant number of jobs and held that plaintiff was not disabled. (A.R. 26-27).

## 1.

Plaintiff seeks an order remanding this matter to the Commissioner under sentence six of 42 U.S.C. § 405(g). (docket # 9). Defendant opposes the motion. (docket # 19). Plaintiff's motion will be denied because he has not satisfied his statutory burden.

"A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon ex rel. Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357. Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) to demonstrate that the evidence he now presents is "new" and "material," and that there is "good cause" for his failure to present this evidence in the prior proceeding. *See Ferguson v. Commissioner*, 628 F.3d 269, 279 (6th Cir. 2010).

A.      The Proffered Evidence Is Not New

Plaintiff seeks remand on the basis of documents dated October 20, 2008 (docket #s 13, 14, 15) and September 17, 2009 (docket # 10).  These documents are not new because they were generated before the ALJ's October 16, 2009 decision.  *See Ferguson*, 628 F.3d at 276.

B.      Plaintiff Has Not Shown Good Cause

The moving party must explain why the evidence was not obtained earlier and presented to the ALJ before the ALJ's decision.  *Ferguson*, 628 F.3d at 276-77; *see Courter v. Commissioner*, 479 F. App'x 713, 725-26 (6th Cir. 2012).  Plaintiff's attorney states that he filed the documents in question, but they are not in the certified administrative record.  (Plf. Brief at 2-3).  This falls far short of establishing good cause.

The initial page of every administrative transcript from the Social Security Administration contains a certification that the documents "constitute a full and accurate transcript of the entire record of proceedings relating to this case."  (A.R. 1).  Plaintiff's attorney should have corrected the purported transcript error long before this stage of judicial review.  If the proffered documents were as critical as plaintiff's attorney now claims, it was incumbent upon him to review the record in advance of the administrative hearing and make sure that the documents were included in the record.  The notice of hearing advised plaintiff's attorney of the opportunity to review the file before the hearing (A.R. 607A), but he did not avail himself of the opportunity to make sure that the administrative record was complete.  He assumed that documents had found their way into the administrative record.  (Plf. Motion at 2, docket # 9, ID# 26).  Attorney error is not "good cause" for remand under sentence six of 42 U.S.C. § 405(g).  *See Cline v. Commissioner*, 96 F.3d 146, 149 (6th

-7-

Cir. 1996); *see also Taylor v. Commissioner*, 43 F. App'x 941, 943 (6th Cir. 2002); *Poe v. Commissioner*, No. 10-12006, 2011 WL 4345291, at * 5 (E.D. Mich. Aug. 12, 2011).

Further, if documents were erroneously omitted from the certified administrative record, the procedure for correcting the problem was a written request to the Social Security Administration for a supplemental certified administrative record. *See* HALLEX: Hearings, Appeals & Litigation Manual I-4-1-58(D) (S.S.A. 2009), available at http://www.ssa.gov/OP_Home/hallex/I-04/I-4-1-58.html (last visited January 23, 2012). The remedy for an omission from the certified administrative record is correction of the record through a supplemental certified administrative record, not remand to the Commissioner under sentence six.

C.    The Evidence Is Not Material

In order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276-78. All of the proffered documents (docket #s 10, 13-15) were generated before plaintiff's disability insured status had expired. For the reasons set forth below, the court finds that the "missing" pages from Psychologist Wagenfeld's report (docket # 10) and the materials generated by Psychologist Brooks (docket #s 13-15) are not material.

(1).    Psychologist Wagenfeld

On September 13, 2009, Psychologist Jeanne Wagenfeld conducted a consultative psychological examination. She generated a report (A.R. 644-45) and a "Medical Provider's Assessment of Ability to do Mental Work-Related Activities" (A.R. 646-48). Incredibly, after conducting the examination in 2009, Wagenfeld opined on plaintiff's condition on and after "May

-8-

2003." (A.R. 646-47). The ALJ found that Wagenfeld's opinions based on a single examination conducted nine months after plaintiff's disability insured status had expired were entitled to minimal weight, because they were based on plaintiff's subjective statements rather than objective tests and were inconsistent with the record as a whole, particularly plaintiff's daily activities:

> Counsel arranged for the claimant to undergo a psychological examination in September 2009 [and Psychologist Wagenfeld] subsequently opined that the claimant had marked difficulties in maintaining social functioning; extreme difficulties in maintaining concentration, persistence, or pace; and four or more episodes of decompensation. This opinion is given minimal weight since [it is] inconsistent with the voluminous medical evidence summarized above and especially the claimant's activities. This opinion appears to be derived primarily from the claimant's subjective history presented at the examination. The only psychological instrument administered to the claimant by the examiner, it is noted, measured basic aspects of depression (Exhibit 22F at 3) with the data reflecting the "moderate depression" category, the same level determined four years earlier (Exhibit 2F at 5 and 22F at 3).

(A.R. 25). Mental health records that are merely a restatement of the patient's own subjective history are of limited utility, because it is the ALJ's job to determine the claimant's credibility. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987); *accord Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all."). Opinions based on the claimant's reporting of his symptoms are not entitled to any particular weight. *See Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007). The ALJ found that the extreme restrictions endorsed by Wagenfeld were inconsistent with plaintiff's daily activities, which included driving a car, living independently, cooking, and providing care and a safe home environment for his minor son. (A.R. 681-683). Plaintiff participated in camping trips and attended his son's baseball games. (A.R. 72). He attended ministry classes and helped out at his church. (A.R. 684). He used a computer to shop online for tools, car parts, etc. (A.R. 71). Plaintiff devoted much of his time to

his hobby of repairing and restoring classic cars.  (A.R. 72, 681-82).  Plaintiff's activities undercut

his claims of disabling functional limitations.[3]  (A.R. 21-25).  *See Walters v. Commissioner*, 127

F.3d at 532; *Blacha v. Secretary of Health & Human Servs*., 927 F.2d 228, 231 (6th Cir. 1990).

Plaintiff seeks sentence-six remand based on pages 3 and 4 of Wagenfeld's

September 2009 report.  (docket # 10, ID#s 29-30).  On these pages, Wagenfeld provided plaintiff's

"Zung Self Rating Anxiety Scale" score, his "Incomplete Sentences Inventory," and her diagnostic

impressions, including a Global Assessment of Functioning score of 47.  This evidence would not

have reasonably persuaded the ALJ to reach a different conclusion on plaintiff's claim for DIB

benefits.  As the name "Zung Self Rating Anxiety Scale" indicates, this score is based on an

individual's self-reporting.  *See Muscavage v. Astrue*, No. 10-6033-cv, 2011 WL 1841149, at * 7 n.5

(W. D. Mo. May 13, 2011); *Hodgson v. Barnhart*, No. 5:05-cv-14, 2006 WL 5527016, at * 33 (N.D.

W. Va. March 27, 2006) ("[T]his test is totally based on self reports of symptoms."); *see also Boyd

v. Astrue*, No. CV-10-196, 2011 WL 3952225, at * 8 (E.D. Wash. Sept. 7, 2011) ("As indicated by

its name and the instructions, the Zung test is a screening tool only, is not a diagnostic device, and

is reliant on self-report.").  The ALJ would not have been persuaded to reach a different conclusion

based on plaintiff's self-reporting, as he found plaintiff's testimony to lack credibility.  *See Hodgson*,

---

[3]Although plaintiff has not directly challenged the ALJ's factual finding regarding his credibility, his arguments are generally dependent on accepting his statements regarding his level of functional restriction. Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ.  *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773.  The ALJ's opinion contains a lengthy discussion of the medical evidence, plaintiff's subjective complaints, and the reasons why the ALJ found that plaintiff's testimony was not fully credible.  (A.R. 20-25).  The ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

2006 WL 5527016, at * 33; *accord Cremin v. McKesson Corp. Employees Long Term Disability Benefit Plan*, No. C 07-1302, 2008 WL 2622786, at * 3 n.2 (N.D. Cal. July 1, 2008) ("[T]he Zung test is a self-rating scale that can be used to assess progress over time, but which 'is not a diagnostic tool and certainly not one that should be used to resolve a dispute as to the valid presence of symptoms because there is no objective validity scale built into the inventory questions.'"). Further, the ALJ had the opportunity to hear plaintiff's testimony. He would not have given significant weight to a statement that it took plaintiff "11 minutes to complete 3 sentences." (docket # 10 at ID# 29).

Wagenfeld gave plaintiff a GAF score of 47. (docket # 10, ID# 29). This subjective score would not have been entitled to any weight. *See Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009). A GAF score is a subjective rather than an objective assessment. *Id*. "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n.7. The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's

-11-

social and occupational functioning."[4] *Kornecky*, 167 F. App'x at 511; *see Oliver v. Commissioner*, 415 F. App'x 681, 684 (6th Cir. 2011).

On page 4 of the report, Wagenfeld offered her opinion that plaintiff is unable to work. (*Id.* at ID# 30). The issue of disability is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), (3). This opinion would be entitled to no weight. The "missing" pages of Psychologist Wagenfeld's report are not material. If they had been presented, they would not have persuaded the ALJ to reach a different conclusion on plaintiff's claim for DIB benefits.

(2).    Psychologist Brooks

The proffered documents from Psychologist Brooks are not material. The documents reveal that Brooks had not seen plaintiff at any time during the sixteen-month period between "June of 2007" and October 20, 2008. (docket # 13, ID# 34). When plaintiff returned in October 2008, it was for the purpose of obtaining an assessment in support of his claim for DIB benefits rather than treatment. Psychologist Brooks recorded plaintiff's statements (docket # 15, ID# 38) and the only test he administered was a Bender Visual-Motor Gestalt test.[5] (docket # 15, ID # 37). Brooks

---

[4]"Significantly, the SSA has refused to endorse the use of the GAF scale." *Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at * 3 (W.D. Mich. Mar. 31, 2011). GAF scores "have no direct correlation to the severity requirements of the mental disorder listings." *DeBoard v. Social Security Admin.*, 211 F. App'x 411, 415 (6th Cir. 2006).

[5]The Bender-Gestalt test, also known as the Bender Visual-Motor Gestalt test, is "a psychological test used for evaluating perceptual motor coordination, for assessing personality dynamics, as a test for organic brain impairment, and for measuring neurological maturation. The subject is asked to make free-hand copies of nine simple geometric designs printed separately on cards or sometimes to reproduce the designs from memory." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1909 (31st ed. 2007); *see Cosby v. Commissioner*, 231 F. App'x 140, 143 n.2 (3d Cir. 2007) ("A Bender Visual-Motor Gestalt test is a psychological test that measures a person's ability to visually copy a set of geometric designs."). The test results are readily subject to manipulation. *See e.g.*, *English v. Astrue*, No. 3:08-cv-2887, 2010 WL 1258025, at * 6 (D. S.C. Feb. 23, 2010)

commented that it took plaintiff an unusually long time to complete his drawings and characterized the drawings as having "problems associated with spacing, size, distortion, and cohesion." (docket # 14, ID # 36). Based upon plaintiff's statements and drawings, Brooks offered his opinion that plaintiff was disabled. (*Id.*). The proffered exhibits are somewhat duplicative of Brooks's testimony[6] (A.R. 656-65) and his RFC questionnaire responses (A.R. 538-41). On June 7, 2007, Brooks testified that, in his opinion, plaintiff was disabled because he would not be able to sustain attention and effort "without becoming easily very fatigued and exhausted." (A.R. 662-63). On June 5, 2007, Brooks offered his opinion that plaintiff had a "marked" limitation in maintaining concentration, persistence, or pace and had "four or more" episodes of decompensation, each of extended duration. (A.R. 539). In 2008, Brooks shifted positions, stating that plaintiff had "never" experienced an episode of decompensation of extended duration. (docket # 13, ID# 34). The opinions Brooks expressed would not be entitled to any particular weight, because they addressed issues reserved to the Commissioner. The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), (3); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v.*

---

(errors reflecting "poor motivation rather than organicity"); *Nguyn v. Astrue*, No. Civ. S-07-1372, 2009 WL 747321, at * 4 (E.D. Cal. Mar. 20, 2009) ("[P]lainiff's performance on Bender-Gestalt test appeared inconsistent with his ability to drive a car."); *Nejat v. Astrue*, No. 3:03-cv-742, 2009 WL 122566, at * 4 (M.D. Tenn. Jan. 16, 2009) (ALJ gave little weight to the test results because the errors appeared to be intentional and indicated that plaintiff was "not working to the best of his ability during the evaluation."); *Dixon v. Astrue*, No. 07-2122, 2008 WL 4334702, at * 1 (N.D. Cal. Sept. 22, 2008) (N.D. Cal. Sept. 22, 2008) (Bender-Gestalt results were invalid because the claimant appeared to be malingering.).

[6]Psychologist Brooks testified that plaintiff and his ex-wife had been referred to him in 2007 by the Kalamazoo County Friend of the Court in connection with their child custody dispute. (A.R. 657). Brooks conducted interviews with plaintiff, his ex-wife, and their son, and was able to help the parties negotiate a custody agreement. (A.R. 658).

*Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). A treating physician or psychologist's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d)(1); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d at 652. The additional documents from Psychologist Brooks would not have reasonably persuaded the Commissioner to reach a different conclusion.

The ALJ gave minimal weight to Brooks's opinions because they were unduly restrictive and inconsistent with the record as a whole:

> Dr. Brooks's opinions, including that the claimant had four or more episodes of decompensation of extended duration (Exhibit 17F at 6) are given only minimal weight. While the claimant at times may have marked difficulty in maintaining concentration, persistence, or pace, the record does not establish repeated episodes of decompensation of extended duration. While the claimant told his therapist that he had a "meltdown" at Goodwill, the episode was brief and not followed by claimant seeking treatment. The degree of limitations Dr. Brooks portrays do not comport with the overall record and run counter [to] the extent of the claimant's activities, as noted throughout this decision, that have included car repair activities, including replacing the burned-out interior of a vehicle. (Exhibit 6E).

(A.R. 25). If the proffered documents from Psychologist Brooks had been presented, they would have been rejected by the ALJ on the same basis. The documents are not material.

Plaintiff has not satisfied the statutory prerequisites for an order under sentence six of 42 U.S.C. § 405(g). The motion for remand will be denied. The ALJ's decision must be evaluated on the administrative record presented to the ALJ.

-14-

**2.**

Plaintiff argues that the ALJ's findings that he did not meet the requirements of listings 12.02 and 12.04 are not supported by substantial evidence. (Plf. Brief at 4-6). "At step three [of the sequential analysis], an ALJ must determine whether the claimant's impairment meets or is equivalent in severity to a listed mental disorder. The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009) (internal quotations and citations omitted). It is well established that a claimant must show that he satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Malone v. Commissioner*, No. 12-3028, 2012 WL 5974463, at * 1 (6th Cir. Nov. 29, 2012). It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment. *Elam*, 348 F.3d at 125.

Listings for mental impairments generally begin with paragraph A criteria -- a statement describing the disorder addressed by the listing (a set of medical findings) -- followed by the paragraph B criteria -- a set of impairment-related functional limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. Listings 12.02 and 12.04 are two of the four mental impairment listings containing paragraph C criteria (a second set of impairment-related functional limitations). *Id.* "The requirements in paragraphs B and C describe impairment related functional limitations that are incompatible with the ability to do any gainful activity." *Id*. These listings are met "when the

-15-

requirements in both A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R.

Pt. 404, Subpt. P, App. 1, §§ 12.02, 12.04.

The ALJ found that plaintiff did not meet or equal the requirements of any listed impairment, including listings 12.02 and 12.04:

> The undersigned has compared the medical evidence for the claimant's impairments against the listings. From this evaluation, the undersigned finds that the impairments, even in combination, do not meet or medically equal any listing, in particular 12.02, *Organic mental disorders*, and 12.04, *Affective disorders*.
>
> For example, the claimant's mental impairment does not result in functional limitations that satisfy the "paragraph-B criteria" of listings 12.02 and 12.04 because the evidence does not show either (1) marked limitation in at least two of the following: activities of daily living; maintenance of social functioning; maintenance of concentration, persistence, or pace; or (2) marked limitation in one of the following: activities of daily living; maintenance of social functioning; maintenance of concentration, persistence, or pace **and** repeated episodes of decompensation, each of extended duration. "Marked" means more than moderate but less than extreme (20 CFR Pt. 404, Subpt. P, App. 1). "Repeated episodes of decompensation, each of extended duration," means three episodes within one year, or an average of one episode every four months, each episode lasting for at least two weeks." (*id.*).
>
> The medical record [] through December 31, 2008, shows that the claimant has a mild restriction in activities of daily living; mild difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration.
>
> In concluding that the claimant has only mild restriction in activities of daily living, of note was his testimony that he lives alone, drives a car despite complaint of experiencing motion sickness since the accident (Exhibits 20F at 1 and 2), testified to some cooking and prepares simple meals (Exhibit 6E at 3), perform[s] personal hygiene activities, albeit at a slower pace (*id.* and Exhibit 5E at 2), cares for his dog with help (Exhibit 6E at 2), uses the computer to go shopping daily, and grocery shops, and responds well to new concepts such as leaving a deposit for the use of a cart (Exhibit 6E at 4 and 12F at 123). He also shares custody of his minor son and there is no evidence that he is unable to provide a safe, healthy environment for him. His activities include camping and attending his son's baseball games (Exhibits 6E at 5 & 12F at 13 and 211).
>
> In concluding that the claimant has only mild difficulties in social functioning, of note is his testimony that he does not like to be around strangers because he has difficulty communicating with them, he also goes to church and takes classes so that he can help the minister during the service, attends his son's baseball games weekly, and maintains

relationships over the telephone (Exhibit 6E at 5).  The record also reflects that the claimant broke up with his girlfriend of seven years after an argument (Exhibit 12F at 171), and that his therapist, after discussing the incident with claimant, opined "he appeared rational in his behavior.["]  In September 2008, the claimant stated he had a girlfriend while admitting that he has had trouble with them in the past because "they don't want to take care of you" (Exhibit 20F at 2).  He likes his neighbors, but does not socialize much with them and he has friends that visit with him (Exhibit 20F at 3).

In concluding that the claimant has marked difficulties in maintaining concentration, persistence, or pace, of note is a report that since the accident, he has experienced difficulty multi-tasking and concentrating, has found his short-term memory lacking, and has difficulty following rapid conversations (Exhibits 6E at 6 and 2F at 5).  He also is less organized, more easily distracted by noise, music, and other people, and if he is so distracted that he becomes over-stimulated, the claimant has shut down (Exhibits 12F at 136, 141, and 192).  While he testified that he reads but does not remember what he had read, testing showed his immediate comprehension was over 90 percent after reading an article about a topic with which he was familiar and immediate comprehension of 80 percent after reading about an unfamiliar topic (Exhibit 12F at 220).  Thirty minutes later, he could not spontaneously recall what he had read, but when given the title, he recalled all the content.  He has had some success with different strategies to accommodate for his difficulty in this domain.  He repeats out loud to himself for reinforcement, uses an alarm in his watch to remind him of appointments, uses a digital recorder to record important conversations and reminders to himself transcribing those reminders into a "to do" list, and maintains a daily planner (Exhibit [12]F at 12, 180, 185, and 274).  However, it should also be noted, that the claimant's activities include repairing cars, as reflected in the testimony, and replacing the burned-out interior of a vehicle (Exhibit 6E).

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and repeated episodes of decompensation, the paragraph-B criteria are not satisfied.

The record also fails to establish the "paragraph-C criteria" under listings 12.02 or 12.04.  For the paragraph-C criteria to apply, an individual's record must contain a medically documented history of a chronic organic mental disorder or an affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, and at least one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase on mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of a continued need for such an arrangement.  Because the record shows the claimant is capable of performing basic work activity (including, for example, using a computer to go shopping), further evaluation fo the paragraph-C criteria is not necessary.

-17-

(A.R. 18-20).

    A.    <u>Paragraph B</u>

    Plaintiff argues that the RFC assessments provided by Psychologists Brooks, Saunders, and Wagenfeld "clearly support" the paragraph B criteria of listings 12.02 and 12.04. (Plf. Brief at 4). These RFC assessments were not entitled to any particular weight. The claimant's RFC and whether he meets or equals the requirements of a listed impairment are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d at 652. Further, plaintiff's burden on appeal is much higher than identifying evidence on which the ALJ could have based a finding in his favor. "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. The Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d at 477.

    The paragraph B severity requirements of listings 12.02 and 12.04 are identical. They require at least two of the following: (1) marked[7] restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. The

---

    [7]A "marked" limitation is a degree of limitation that is more than moderate, but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *see Sullenger v. Commissioner*, 255 F. App'x 988, 993 (6th Cir. 2007).

ALJ found that through his date last disability insured, plaintiff had no episodes of decompensation of extended duration, mild restriction in activities in daily living, mild difficulties in social functioning, and a marked restriction in concentration, persistence and pace. (A.R. 18-20). The court finds that all of the ALJ's paragraph B findings are supported by more than substantial evidence.

      B.    <u>Paragraph C</u>

      Plaintiff argues that he met the requirements of paragraph C(1) of listings 12.02 and 12.04 because "[u]nder Dr. Brooks' forms and Dr. Wagenfeld's RFC forms, Mr. Blank ha[d] repeated episodes of decompensation, each of extended duration." (Plf. Brief at 5). The paragraph C requirements for listings 12.02 and 12.04 include a medically documented history of a chronic disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or

    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.02(C), 12.04(C). The ALJ found that plaintiff did not satisfy paragraph C's requirements. (A.R. 20). Repeated episodes of decompensation, each of extended duration, is defined as three episodes within one year, or an average of one episode every four months, each episode lasting for at least two weeks. Repeated episodes of extended duration

means at least three episodes during one year, or an average of one per four-month period, each

lasting at least two weeks.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4); *see Rohwer v.*

*Commissioner*, No. C11-4110, 2013 124425, at * 11 n.6 (N.D. Iowa Jan. 9, 2013); *Monroe v. Astrue*,

No. 09-cv-3338, 2011 WL 98972, at * 8 (C.D. Ill. Jan. 12, 2011); *Pugh v. Astrue*, No. 1:09-cv-112,

2010 WL 1544271, at * 6 (E.D. Tenn. Feb. 17, 2010).

Psychologists Brooks and Wagenfeld completed questionnaires indicating that

plaintiff experienced four or more episodes of decompensation, each of extended duration.  (A.R.

539, 647).  However, they did not identify any specific episodes of decompensation, much less

episodes of the frequency and duration necessary to satisfy paragraph C(1) of listings 12.02 and

12.04.  The psychologists' conclusory statements, unsupported by any medical testing or evidence,

were of little or no value.  The ALJ's findings that plaintiff experienced no episodes of

decompensation of extended duration and that he did not satisfy the paragraph C requirements of

listings 12.02 and 12.04 are supported by more than substantial evidence.

### 3.

Plaintiff argues that the ALJ's decision should be overturned because the ALJ found

that he had a "marked" limitation in his ability to maintain concentration, persistence, or pace and

failed to incorporate that limitation into the hypothetical question posed to the VE.  (Plf. Brief at 6-

7).  Plaintiff's argument conflates distinct steps of the sequential analysis.  The administrative

finding whether a claimant meets or equals a listed impairment is made at step 3.  *See* 20 C.F.R. §

404.1520(a)(4)(iii).  The ALJ found that plaintiff did not meet the requirements of paragraph B of

listings 12.02 and 12.04 because his only marked impairment was in the area of concentration,

persistence, or pace.  The paragraph B criteria are used to rate the severity of the impairments at step

3 of the sequential analysis and they "are not an RFC assessment." *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p (reprinted at 1996 WL 374184, at * 4 (SSA July 2, 1996)).

The administrative finding of a claimant's RFC is made between steps 3 and 4 of the sequential analysis. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); *see also Vorholt v. Commissioner*, 409 F. App'x 883, 886 (6th Cir. 2011). RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is an administrative finding of fact made by the ALJ on the record as a whole. The ALJ found that through his date last disability insured, plaintiff retained the RFC "to perform work at all exertional levels, subject to an environmental need to avoid even moderate exposure to noise and a limitation to unskilled work involving no more than 2-step tasks in a stable work environment with no production quotas, and not requiring contact with the public or more than incidental contact with supervisors or co-workers." (A.R. 20). The court finds that the ALJ's factual finding regarding plaintiff's RFC is supported by more than substantial evidence. The fatal flaw in the ALJ's decision is that the ALJ never posed a hypothetical question to the VE incorporating this RFC finding.

The Commissioner has the burden at the fifth step of the sequential analysis to establish the claimant's ability to do other work. *White v. Commissioner*, 572 F.3d at 282. A VE's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *see Carelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010). A hypothetical question is not required to list the claimant's

-21-

medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). Where the hypothetical question does not accurately incorporate the claimant's limitations, the VE's response does not provide substantial evidence supporting the ALJ's decision. *Varley*, 820 F.2d at 779.

Here, the ALJ committed error when his hypothetical question to the VE used the RFC finding from his earlier decision, which had been overturned by the Appeals Council:

> The claimant has no physical limitations but mentally is limited to a "marked" degree in the abilities to understand, remember, and carry out detailed instructions; and to a "moderate" degree in the abilities to maintain attention and concentration for extended periods; to perform activities within a schedule, to maintain regular attendance, and to be punctual within ordinary tolerances, and to travel in unfamiliar places or use public transportation.

(A.R. 590-91). The ALJ's hypothetical question did not include the limitations on noise exposure, production quotas, and contact with the public, co-workers, and supervisors that he specified in his factual finding regarding plaintiff's RFC. (A.R. 20). The VE identified more than 35,600 jobs in his response to the hypothetical incorporating the wrong RFC. (A.R. 687-88). The ALJ based his disability decision on the VE's response to the inaccurate hypothetical question. (A.R. 26). Because the ALJ's hypothetical question did not accurately reflect plaintiff's RFC, the VE's response cannot provide substantial evidence supporting the ALJ's decision. *See Ealy v. Commissioner*, 594 F.3d 504, 516-17 (6th Cir. 2010).

## **Conclusion**

For the reasons set forth herein, the court will deny plaintiff's motion for a remand to the Commissioner under sentence six of 42 U.S.C. § 405(g).  A judgment will be entered vacating the Commissioner's decision and remanding the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.


Dated:   January 30, 2013                    /s/  Joseph G. Scoville
                                                       United States Magistrate Judge